```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                 FORT MYERS DIVISION
```

IN RE:  PASQUALE B. NARCISI,
II

_____

MARJORIE AAMODT and NORMAN
AAMODT,

      Appellants,

v.                              Case No: 2:15-cv-765-FtM-29

PASQUALE B. NARCISI, II,

      Appellee.

_____

## OPINION AND ORDER

This matter comes before the Court on an appeal from the Bankruptcy Court's October 8, 2015, Memorandum Opinion and Order on Plaintiffs' Amended Motion for Summary Judgment (Doc. #4-7; Adv. Doc. #37)[1]. Appellants Marjorie Aamodt and Norman Aamodt filed their Corrected and Amended Brief (Doc. #9) on January 28, 2016. Appellee did not appear, or file a responsive brief.

The Bankruptcy Court granted summary judgment in favor of appellee-debtor Pasquale B. Narcisi, and against appellants' claims being excepted from discharge for fraud while acting in a fiduciary capacity and larceny under 11 U.S.C. § 523(a)(4). A

---

[1] The Court will hereinafter cite documents filed with the District Court as "Doc.", and documents filed in the Adversary Proceeding as "Adv. Doc.". Copies of the relevant documents are included in the record transmitted by the Bankruptcy Court or otherwise available through PACER and judicially noticed.

separate Final Judgment (Doc. #3-2) was issued declaring appellants' claim to be dischargeable.

**I.**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. 28 U.S.C. § 158(a); In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error. In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009). This appeal arises from the resolution of a motion for summary judgment, and these legal principles are also well established. Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Fed. R. Bankr. P. 7056 (Rule 56 applies adversary proceedings). In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). The entry of summary judgment involves no findings of fact and therefore a summary judgment ruling is reviewed *de novo*. In re Optical Techs., Inc., 246 F.3d 1332, 1334-1335 (11th Cir. 2001).

**II.**

In 1984, appellant Marjorie Aamodt and her husband Norman Aamodt (collectively appellants) decided to sell some larger antiques from their farmhouse in Pennsylvania before moving to Lake Placid, New York. Appellants consulted with several antique dealers and auctioneers, including Pasquale B. Narcisi (appellee or debtor), who was hired. Appellee removed many of the pieces, with appellants' permission, for sale at his own auction house in Philadelphia operating under the name Maine Line Auctioneers & Appraisers. (Doc. #3-11, p. 62.) Appellants traveled back to Pennsylvania to attend the auction, and discovered many of the pieces were missing because they had been sold at a "Friday night sale" for an amount less than their estimated value. A consulting expert told appellants they had been defrauded and they filed suit in Pennsylvania. (See generally Doc. #3-5, Affidavit of Marjorie Aamodt.)

Appellants initiated a complaint in the Court of Common Pleas of Chester County, Pennsylvania, and that court made certain factual findings on the record. (Id., p. 3-11, pp. 64-67, Exh. 5.) The Pennsylvania court found that there was an agreement between the parties; that the Consignment Control had a minimum valuation for all of the assets of $25,000 but was not the entire agreement; that it was supposed to be a date certain sale for only appellants' property, which consisted of 550 items. The court

also found that the agreement was that there would be a catalog, and that it was unrealistic for Mrs. Aamodt to believe that the items could be photographed, appraised, cataloged within 30 days. The court found that appellee violated the terms of the agreement by selling items on days other than the date certain without notice to appellants, by co-mingling the assets for sale, and by conducting the sale "in a less than vigorous manner that one would anticipate a qualified auctioneer to do." (Id., pp. 65-66.) After hearing from James Dickerson, an expert appraiser and auctioneer, the court split the estimate and awarded damages in the amount of $55,000 minus $14,795.83, plus costs with interest from the October 27, 1984 date of sale going forward. (Id., p. 8, ¶ 8; p. 66.)  On November 28, 1994, the court issued the Order in favor of appellants in the amount of $40,204.17, with costs and interests. (Doc. #4-4, p. 7, Exh. A.) Defendant did not appear or appeal the findings. (Id., p. 9, ¶ 9.)  On November 30, 1994, a judgment was issued against appellee for $61,326.67, the amount of damages plus the accrued interest over 10 years. (Adv. Doc. #37, p. 3.)  After some searching, the judgment was domesticated in Florida where appellee moved to in or around 2007-2008. (Doc. #3-5, pp. 3-4.)

On July 28, 2014, appellee filed a Chapter 7 bankruptcy case, and on January 16, 2015, appellants initiated their adversary Complaint Objecting to Dischargeability of Debt to Aamodts (Doc.

#3-5) alleging fraud. Attached to the Complaint are two Affidavits with regard to the fraud, and referenced herein for summary judgment purposes. Appellee appeared and filed a *pro se* Answer (Doc. #3-6) and affirmative defenses that appellants interfered with the auction by bidding on their own property, that he paid appellants $16,000 after his 20% of the approximately $20,000 in proceeds from the sale, and that appellants' appraisal and the total proceeds were consistent.

In support of summary judgment, appellants provided a copy of an unsigned Consignment Control contract providing for a "guarantee of $25,000 net", an auction sale date of October 27, 1984, and for appellants to pay the 1st $400 towards moving. (Doc. #3-11, p. 46 Exh. 1.) The auction list included approximately 350 total items, of which appellants' items were intermingled and included for sale. (Id., pp. 6-7, ¶ 5; pp. 48-60, Exh. 3.) Of the listed items, 157 items were sold at a value of approximately $2,000, through private sales and prior to the auction date without appellants' knowledge. (Id., p. 6, ¶ 4.) Out of the total sales as of October 29, 1984, appellee deducted his commission and the amount for purchases made by appellants at auction of their own items, and less the $400 for the moving expense for a total of $14,745.83.[2] (Id., p. 62, Exh. 4.)

---

[2] Appellants assert that appellee only returned $10,490.83 to them. (Doc. #3-11, p. 7, ¶ 6.) The check issued by Main Line Auctioneers and Appraisers was for $14,795.83. (Doc. #4-4, p.

Appellants argue that there are no genuine issue of facts as to appellee's fraud based on the Pennsylvania court's findings and appellee's "conscious reckless execution of his fiduciary duty" to them.  (Doc. #3-11, pp. 10-12.)  Although not alleged in the Complaint, appellants went on to argue in the amended motion that the facts show that appellee embezzled from appellants by retaining items and also committed larceny by converting items for private sales.  Appellee responded to the request for summary judgment that there was a material question of fact as to the fraud allegations presented by appellants because the record reflected no fraud.

The Bankruptcy Court treated the amended motion for summary judgment as containing a motion for leave to file an amended complaint, and accepted plaintiffs' facts as undisputed for purposes of review.  The Bankruptcy Court found that the claim of larceny related back to the original complaint, but that the claim of embezzlement relied on facts not previously alleged, i.e., that appellee must have held back and retained property.  (Adv. Doc. #37, p. 6.)  The Bankruptcy Court found no fiduciary relationship between the parties, and that plaintiffs could not establish that appellee committed fraud, only a breach of contract.  The Bankruptcy Court generously went on to consider the larceny argument despite there being no allegations in the Complaint to

---

26.)

support such a claim, but found that the argument also failed. (Id., p. 11.)  Finding no further evidence could be produced, summary judgment was granted in favor of appellee and the debt was found to be dischargeable.

On reconsideration, the Bankruptcy Court considered appellants' argument that Pennsylvania's Auctioneer Licensing and Trading Assistant Registration Act had been overlooked.  The Bankruptcy Court found that the requirement to post a bond was regulatory in nature and did not create a fiduciary duty to any of the auctioneer's future clients.  (Doc. #3-14, p. 5.)  The Bankruptcy Court went on to consider the other provisions of the Act "to ascertain whether a fiduciary relationship is created", but found no basis.  (Id.)  The Bankruptcy Court also reconsidered its finding of no fraud, and further considered the fraud claim under 11 U.S.C. § 523(a)(2)(A) despite it not being asserted in the Complaint.  The Bankruptcy Court found that the facts relied upon supported a finding of breach, but not fraud.  (Id., pp. 7-8.)  The Bankruptcy Court further found that the failure to conduct the auction as agreed did not constitute larceny as the items were voluntarily provided to appellee for auction.  (Id., p. 8.)

Appellants filed a Notice of Appeal (Adv. Doc. #47) from the Final Judgment and an Election to Appeal (Adv. Doc. #53) stating that an amended notice of appeal was filed on December 4, 2015,

from the November 30, 2015 Order Denying Plaintiffs' Motion for Reconsideration (Adv. Doc. #49).

### III.

On appeal, appellants present several issues: (1) whether summary judgment in favor of appellee is collaterally estopped by the Pennsylvania Order and/or the ruling in a different adversary proceeding in appellee's prior bankruptcy case; (2) whether the finding of no fiduciary responsibility and no larceny was an error as a matter of law; (3) whether denial of leave to amend for embezzlement was fair; and (4) whether there was an abuse of discretion generally.

A discharge under Chapter 7 of the Bankruptcy Code does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The issue of nondischargeability is "a matter of federal law". Grogan v. Garner, 498 U.S. 279, 284 (1991).

*Collateral Estoppel*

Collateral estoppel applies in discharge proceedings. Grogan, 498 U.S. at 285 n.11. Collateral estoppel will be applied when an issue is identical to the one presented in a previous case, for which a judgment on the merits has issued, where the parties are the same in both actions and a full and fair opportunity to litigate the issue was provided, and the determination was

essential to the judgment.  <u>In re Jacobs</u>, 381 B.R. 128, 142 (Bankr. E.D. Pa. 2008).  <u>See also</u> <u>Brown v. R.J. Reynolds Tobacco Co.</u>, 611 F.3d 1324, 1332 (11th Cir. 2010) (Collateral estoppel, or issue preclusion, "prevent[s] re-litigation of issues that have already been decided between the parties in an earlier lawsuit.").

Appellants rely on a copy of a "History Report" from Adversary Proceeding Case No. 9:08-ap-000370ALP, a previous adversary proceeding brought by appellants against appellee in his Chapter 13 filing, Bankruptcy Case No. 9:07-bk-09555-ALP.  (Doc. #3-10.)  The docket entry from the generated History/Documents Query for the case reads:  "Order Dismissing Adversary (Gen Case Dismissed, Discharge Denied)".  Despite appellants' belief to the contrary, there was no determination by the Bankruptcy Court as to their specific debt, or its dischargeability.  The Order Dismissing Adversary Proceeding dismissed the case because "on October 7, 2008 this Court dismissed the Chapter 13 case."  (Adv. Pro. Case No. 9:08-ap-000370ALP, Doc. #29.)  The underlying Chapter 13 case was dismissed with prejudice for a period of 180 days because of appellee's failure to file an amended Chapter 13 Plan, and therefore the adversary proceeding was dismissed without prejudice to appellants.  (Bankr. Case No. 9:07-bk-09555-ALP, Doc. #78.)  No decision was made with regard to appellants' claim, and therefore

the reliance on the dismissal as meaningful to appellants' claim is misplaced.

In the motion for summary judgment, appellants argued that appellee made a false statement of material facts by promising an auction on a date certain and guaranteeing $25,000; that he did so with the intent to dispose of items by private sale; that appellants justifiably relied on the agreement with appellee; and that the judgment shows the loss suffered. (Doc. #3-11, pp. 10-11.) Despite appellants' interpretation of the Pennsylvania court's findings[3], no court has found the existence of a fiduciary duty owed by appellee, and certainly no fraud. The Pennsylvania court found a breach and that appellee was "less than vigorous" in his conduct, and awarded damages based on the breach of the parties' agreement. Therefore, the Court finds that collateral estoppel does not apply to bar finding that the appellants' debt is dischargeable.

### *Findings of the Bankruptcy Court*

Appellants also assert that the Bankruptcy Court erred in finding no fiduciary duty, and no larceny as a matter of law. The Court finds no misapplication of the law. A fiduciary refers to

---

[3] Appellants state that the findings "of the Pennsylvania court of Narcisi's *obvious* violations of agreements and less rigorous conduct of the auction, and the award of damages far in excess of Narcisi's guarantee, confirm, alone, Narcisi's conscious reckless execution of his fiduciary duty to the Aamodts." (Doc. #3-11, p.12)(emphasis in original). The Pennsylvania court made no such statement or finding.

a technical trust, or an express trust. Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993) (citations omitted). "An express or technical trust exists when there is a segregated trust res, an identifiable beneficiary, and affirmative trust duties established by contract or by statute." In re Hutchinson, 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996) (quoting In re Triggiano, 132 B.R. 486, 490 (Bankr. M.D. Fla. 1991)).

The Bankruptcy Court considered whether a fiduciary relationship existed under Pennsylvania State statutes[4], including the additional one raised by appellants on reconsideration. After a *de novo* review, the Court agrees that no fiduciary duty existed under contract or statute for purposes of § 523(a)(4).

"For purposes of nondischargeability under § 523(a)(4), 'larceny' is defined as the fraudulent taking and carrying away property of another with intent to convert such property to the taker's use without the consent of the owner." In re Cunningham, 482 B.R. 444, 447 (Bankr. N.D. Ala. 2012) (citation omitted). "Larceny, unlike embezzlement, requires that the original taking of the property be unlawful." In re Pupello, 281 B.R. 763, 768 (Bankr. M.D. Fla. 2002) (citing In re Hofmann, 144 B.R. 459, 464 (Bankr. D.N.D. 1992)).

---

[4] State law is relevant to the inquiry of whether a statutory fiduciary duty exists. McDowell v. Stein, 415 B.R. 584, 594-95 (S.D. Fla. 2009).

In the motion for summary judgment, appellants argue that while appellee had "the right of possession of Aamodts items to auction, he converted the assets for unintended private sales." (Doc. #3-11, pp. 12-13.) Appellants' argument fails for two reasons: 1) there is no evidence presented of intent by appellee to convert for his own use[5], and 2) appellee was admittedly in *lawful* possession of the items based on the agreement when they were allegedly converted. For these reasons, summary judgment should have been denied, and the Court finds no error as a matter of law in the denial.

*Leave to Amend*

The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). See also Fed. R. Bankr. P. 7015 (providing that Rule 15 applies in adversary proceedings). Leave to amend is within the discretion of the Court but may be denied for the stated reasons of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

---

[5] "Fraudulent intent may be inferred from surrounding circumstances and the conduct of the accused." In re Cunningham, 482 B.R. at 448. In this case, appellants failed to present even circumstantial evidence of appellee's fraudulent intent.

Denial of the construed motion for leave to amend the complaint to add embezzlement is reviewed for abuse of discretion. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). "[A] complaint to determine the dischargeability of a debt under § 523(c)[6] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). This is also the deadline to file a motion for an extension of time to file the initial complaint. In re Alton, 837 F.2d 457, 458 (11th Cir. 1988). It is undisputed that the original complaint was timely filed.

The Bankruptcy Court noted that the construed motion for leave to amend and add embezzlement was filed nearly 6 months after this deadline, and after the initial motion for summary judgment had been filed, but permitted the amendment to the extent that it related back to the original and timely-filed complaint. The Bankruptcy Court found that the claim for embezzlement did not relate back because it relied on facts that were not previously alleged.

---

[6] Section 523(c) provides that a debtor "shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge. . . ." 11 U.S.C. § 523(c)(1).

Appellants argue that they pled embezzlement in the original complaint because they cited § 523(a)(4), which lists embezzlement, "and then provided the evidence of embezzlement" with their initial disclosures of appellee's final accounting. (Doc. #9-1, p. 14.)  A review of the two-page Complaint reflects the following reference to § 523(a)(4):

> The debt was incurred by Mr. Narcisi due to his fraud in acting in a fiduciary capacity for the Aamodts and is not dischargeable under U.S. Code Chapter 523, Section (a)(4) ..

(Doc. #3-5, p. 1)(ellipses in original).  The attached affidavits make no further reference to the statute, or to embezzlement. Therefore, the claim that embezzlement was asserted in the initial complaint and relates back is without merit.

Appellants assert that appellee's accounting "<u>inadvertently</u> reveals appellee's retention of an unknown and unidentified number of appellants' items, which is embezzlement. (Doc. #3-11, p. 12) (emphasis in original).  The "accounting" was provided as part of discovery and pursuant to the Order Setting Trial and Establishing Pre-Trial Procedures (Doc. #3-8).  To assert a claim of embezzlement under § 523(a)(4) for nondischargeability purposes, appellants have to show that appellee "appropriated funds or property for his own benefit and that he did so with fraudulent intent or deceit."  <u>In re Pupello</u>, 281 B.R. 763, 767 (Bankr. M.D. Fla. 2002).  It is unclear how the "accounting", which is a 1984 hand-written total with no signatures on appellee's letterhead,

reflecting "total sales to date" supports a claim of appropriating property *with intent*.  The Court finds no abuse of discretion in denying leave to amend.

### *Cancellation of Trial/Summary Judgment in Favor of Appellee*

Appellants argue that cancellation of trial on the merits was improper because eliciting testimony was the only way they could prove their claim of an intent to defraud.  The Bankruptcy Court determined that if the case were to go to trial, additional evidence would not support appellants' claims because chances were "non-existent" that appellee would provide direct testimony of an intent to defraud.  The Bankruptcy Court found it would be a disservice to require plaintiffs to travel for trial, and granted summary judgment in favor of appellee.

> In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)]. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).  If, so viewed, a rational trier of fact could find a verdict for the nonmoving party under the substantive evidentiary standard, the nonmoving party can defeat summary judgment. Id. 477 U.S. at 252.

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998–99 (11th Cir. 1992). The Bankruptcy Court took appellants' facts as true and undisputed, and appellee did not oppose the facts in the record as whole. In responding to the motion for summary judgment, appellee noted that there was a genuine material of fact as to fraud because there was no record of fraud. The Bankruptcy Court found, in a light most favorable to the nonmoving appellee, that plaintiffs could not present any facts to support their claims at trial and *sua sponte* granted summary judgment in favor of appellee. The Court finds no abuse of discretion, as it was within the Bankruptcy Court's authority to do so.

> After giving notice and a reasonable time to respond, the court may:
>
> **(1)** grant summary judgment for a nonmovant;
>
> **(2)** grant the motion on grounds not raised by a party; or
>
> **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f). Trial courts "unquestionably possess the power to trigger summary judgment on their own initiative." Massey v. Cong. Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997) (citations omitted). "But so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary

judgment *sua sponte* is entirely appropriate."  <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1204 (11th Cir. 1999).

In this case, appellants moved for summary judgment and appellee was given notice and the opportunity to respond, and did respond.  The Bankruptcy Court had all the information it needed to rule on the legal issues, and appellee did not dispute the evidence or facts presented by appellants.

Finding no legal basis for appellants' claims, and no genuine material dispute of fact, the Court finds that summary judgment in favor of appellee was appropriate.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The October 8, 2015, Memorandum Opinion and Order on Plaintiffs' Amended Motion for Summary Judgment is **AFFIRMED.**

2. The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __28th__ day of September, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Caryl E. Delano
Clerk, Bankr. Court
Parties of Record